**MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE &
BOUGHMAN, PLLC. v. BREWER**

[209 N.C. App. 369 (2011)]

MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE & BOUGHMAN, PLLC;
GLENN B. ADAMS; HAROLD L. BOUGHMAN, JR.; AND VICKIE L. BURGE,
PLAINTIFFS v. COY E. BREWER, JR.; RONNIE A. MITCHELL; WILLIAM O.
RICHARDSON; AND CHARLES BRITTAIN, DEFENDANTS

No. COA09-1020

(Filed 1 February 2011)

**1. Appeal and Error— preservation of issues—failure to raise
in business court—lack of verification of complaint not
jurisdictional**

Plaintiffs' motion to strike footnote two in defendant cross-
appellees' brief was granted under N.C. R. App. P. 10. Lack of
verification under N.C.G.S. § 1A-1, Rule 23(b) was not jurisdictional,
and defendants' arguments concerning lack of verification of the
complaint were waived because they were not raised before the
business court.

**2. Appeal and Error— interlocutory orders and appeals—
Rule 54(b) certification—no just reason for delay—avoiding
piece-meal litigation**

Even though the Court of Appeals was not bound by the business
court's N.C.G.S. § 1A-1, Rule 54(b) certification, in its discretion
it reviewed the parties' appeals from interlocutory orders
because there was no just reason for delay and to avoid piece-
meal litigation given the multiple interrelated claims and counter-
claims brought forth by the parties.

**3. Jurisdiction— standing—derivative claims—individual claims**

The business court's summary judgment rulings on standing
in a case concerning the operation and breakup of a law firm
were affirmed and reversed. Plaintiffs had standing to bring their
derivative claims, but not their individual claims. Defendants had
standing to bring their counterclaims on behalf of the law firm,
but not their individual counterclaims.

**4. Corporations— dissolution of law firm—derivative action—
individual claims**

The business court erred by granting partial summary judgment
in favor of defendants on the basis of equitable estoppel, and the
case was remanded to the business court for granting of summary

judgment in favor of plaintiffs on the issue of judicial dissolution under N.C.G.S. § 57C-6-02, for a decree of dissolution, and directing the winding up of the law firm under N.C.G.S. § 57C-6-02.3. The business court also erred by granting defendants' motion for summary judgment dismissing plaintiffs' derivative claims for constructive fraud/breach of fiduciary duty and unfair and deceptive trade practices, and those claims were remanded for further proceedings. Further, the business court erred by ruling that defendants' counterclaims on behalf of the law firm for breach of fiduciary duty, conversion/misappropriation of law firm assets, unjust enrichment, constructive trust, equitable lien, and/or resulting trust, and breach of fiduciary duty/*ultra vires* were moot, and those claims were remanded for future proceedings. Defendants' counterclaims for breach of fiduciary duty and unjust enrichment could also go forward because the business court made no rulings on these counterclaims.

Appeal by plaintiffs and defendants from opinion and order entered 31 March 2009 by Judge John R. Jolly, Jr. in Special Superior Court for Complex Business Cases, Cumberland County. Heard in the Court of Appeals 27 January 2010.

*Everett, Gaskins, Hancock & Stevens, LLP, by E.D. Gaskins, Jr., and Louis E. Wooten, III, for plaintiff-appellants.*

*Coy E. Brewer, Jr., for defendant-appellants.*

STROUD, Judge.

An old saying declares that "the cobbler's children have no shoes." Lawyers may suffer from the same problem, if they are too busy dealing with their clients' legal affairs to address their own. This case arises because the members of a law firm organized as a PLLC did not adopt an operating agreement or any other documents governing the operation of the PLLC. In their actions and communications relevant to the individual plaintiffs' cessation of practice with the individual defendants, the parties at times seem to treat their business as a partnership and at other times as a PLLC, and certainly a PLLC has elements of both types of business entities. *See Hamby v. Profile Products, L.L.C.*, 361 N.C. 630, 636, 652 S.E.2d 231, 235 (2007) ("An LLC is a statutory form of business organization . . . that combines characteristics of business corporations and partnerships." (quotation marks omitted)). Plaintiffs' theory of this case is based upon their

argument that when the law firm broke up, they did not withdraw
from the PLLC, but the PLLC must be dissolved pursuant to N.C. Gen.
Stat. § 57C-6-02; defendants' theory is that plaintiffs withdrew from
the PLLC, which did not dissolve, nor is it subject to judicial dissolution
based upon the plaintiffs' actions. All of the parties' many claims,
counterclaims, and defenses stand or fall based upon the answer to
the question of whether this is a case of dissolution or withdrawal.

Glenn B. Adams, Harold L. Boughman, Jr., and Vickie L. Burge as
individual members of the law firm of Mitchell, Brewer, Richardson,
Adams, Burge & Boughman, PLLC ("the PLLC") and derivatively on
behalf of the PLLC (collectively referred to as "plaintiffs") appeal
from the business court's order granting partial summary judgment in
favor of defendants Coy E. Brewer, Jr., Ronnie A. Mitchell, William O.
Richardson, and Charles Brittain on the basis of equitable estoppel.
Defendants Brewer and Mitchell (collectively referred to as "defend-
ants") appeal from the business court's denial of their motion for
summary judgment based on plaintiffs' lack of standing. For the
following reasons, we affirm the business court's ruling on partial
summary judgment as to standing, reverse the business court's ruling
on partial summary judgment as to equitable estoppel, and remand
for further proceedings.

## I. Background

Most of the facts surrounding the operation and breakup of the
PLLC are undisputed. Plaintiffs Adams, Burge, and Boughman and
defendants Brewer, Mitchell, and Richardson began practicing law
together in 2000, as a North Carolina Professional Limited Liability
Company (referred to herein as "the PLLC"). Defendant Brittain
became a member of the PLLC in 2003. The parties never entered into
a written operating agreement or any other written documents or
agreements setting forth their rights and responsibilities as members
of the PLLC during the time when they practiced law together.

On 14 June 2005, the members met to discuss the economic
performance of the PLLC. Defendant Brewer raised questions as to
the revenues generated by plaintiffs. Plaintiffs' understanding was
that defendant Brewer wished to change the percentages for distribution
of the PLLC's profits. At some point during the meeting, plaintiff
Adams stood up and said, "I see where this is going. I'm out of here[,]"
and clarified that he "meant [he was] out of the firm[,]" and for them
to "[d]raw the papers up." A few minutes after plaintiff Adams left,
plaintiff Boughman said, "Well, I'm going too[,]" and also left the

room. Following his departure, plaintiff Adams sent an email to the PLLC members stating: "i [sic] would expect my share of revenue and compensation to equal my share of ownership . . . that would include any revenue from this day forward. please [sic] let me know who i [sic] need to speak with concerning my leaving the firm." Before the end of June 2005, plaintiff Burge also informed defendants that she was leaving the PLLC and would join the other two plaintiffs in forming a new law practice.

Following these events, plaintiffs began making plans to establish a new law firm. Sometime around late June or early July 2005, plaintiff Adams and defendant Brewer met to discuss the PLLC. Plaintiffs Burge and Boughman had picked plaintiff Adams to represent them at this meeting and defendants Mitchell, Richardson, and Brittain had chosen defendant Brewer to represent them. Plaintiff Adams and defendant Brewer agreed on some of the material issues related to the PLLC breakup, including the distribution of office furnishings and equipment, and renting office space. However, they could not come to an agreement on the division of financial assets and liabilities of the PLLC, as plaintiffs believed they were entitled to a share of the future contingent fees generated by cases pending prior to 14 June 2005, and defendant Brewer "firmly disagreed with that."

On or about 8 July 2005, defendant Brewer sent a memorandum entitled "Winding up of affairs; dissolution of partnership" ("the Brewer memo") to the members of the PLLC. The Brewer memo explained that "[i]n the absence of any agreement concerning the withdrawal from our law firm of [plaintiffs], the remaining members of the firm are effectuating a winding up of the operation of the law firm as it was previously constituted which we firmly believe to be in all respects fair and equitable." Further, the Brewer memo stated that defendants had paid off the PLLC's debts, including lines of credit and other PLLC expenses, with proceeds from a class action case managed by defendants Mitchell and Brewer. The Brewer memo also stated that defendants were distributing the remaining assets to the members based on their membership interests. The Brewer memo further claimed that the disputed pending contingent fee cases had "no ascertainable present value" and that plaintiffs would be reimbursed for the expenses that the PLLC advanced through loans related to the contingent cases if the PLLC recovered a fee from that individual contingent fee case according to the "agreed compensation formula." Enclosed in copies of the Brewer memo sent to plaintiffs were checks for the amounts to be distributed to plaintiffs under the terms of the

Brewer memo. Plaintiffs never cashed these checks. The Brewer memo repeatedly referred to plaintiffs as "withdrawing members" but also stated that defendants are "winding up" the PLLC. In his deposition, defendant Brewer explained that he was using these terms in a "non-technical sense[.]" Defendant Brewer explained that by the term "withdrawal" he meant that "[plaintiffs] made it clear to me that they no longer wanted to practice law with me and wanted instead to practice law together and separate and apart from me and my law practice." Defendant Brewer never discussed the content of the Brewer memo with plaintiffs. Defendant Brewer also stated that the PLLC received a fee from one of the disputed contingent fee cases but had not reimbursed plaintiffs their shares of the expenses from that case, as the Brewer memo had described, because he knew plaintiffs had not negotiated the checks tendered with the Brewer memo and issuing reimbursement checks would have been "futile."

On 17 August 2005, plaintiff Boughman wrote a letter to a BB&T bank representative informing the bank that "the law firm previously known as Mitchell, Brewer, Richardson, Adams, Burge and Boughman [had] dissolved[,]" to request documentation "showing that all of the debts owed to BB&T by [the PLLC members] had been satisfied and cancelled, and to inform the bank that plaintiffs "do not consent to any funds being lent on any notes that we executed." Defendants took steps to close the PLLC consistent with State Bar rules but did not complete that process due to a computer crash. Plaintiffs' counsel sent defendants a letter dated 6 January 2006 to set up a time to discuss the financial issues related to the PLLC's breakup, including the disputed contingent fee cases, and another follow-up letter, dated 21 June 2006, stating that plaintiffs viewed the breakup as a dissolution.

On 5 July 2006, plaintiffs filed suit against defendants Brewer, Mitchell, Richardson, and Brittain. Plaintiffs' complaint set forth claims for (1) an accounting to the PLLC, (2) an accounting to plaintiffs, (3) demand for liquidating distribution, (4) constructive fraud/breach of fiduciary duty, and (5) unfair and deceptive trade practices. Plaintiffs also sought a judicial dissolution of the PLLC. Plaintiffs raised these claims individually and derivatively on behalf of the PLLC. The case was designated a complex business case by order from the Chief Justice of the North Carolina Supreme Court and was assigned to the Business Court. Plaintiffs amended their complaint three times, on or about 7 August 2006, 23 May 2007, and 17 February 2009. On 1 November 2006, defendants moved to dismiss plaintiffs'

complaint. By order dated 8 May 2007, the business court denied defendants' motion to dismiss. On 13 June 2007, defendants filed their answer, raising multiple defenses and the following counterclaims: (1) a declaratory judgment that plaintiffs withdrew from the PLLC; (2) a declaratory judgment that plaintiffs were equitably estopped from denying that they agreed to a dissolution of the PLLC pursuant to the terms in the Brewer memo; (3) in the alternate, breach of fiduciary duty; (4) the conversion/misappropriation of the PLLC assets; (5) unjust enrichment for failure to account to the PLLC; (6) constructive trust, equitable lien and/or resulting trust; (7) breach of fiduciary duty in connection with "the defense of [a] malpractice action[;]" (8) unjust enrichment in connection with "the defense of [a] malpractice action[;]" (9) breach of fiduciary duty/*ultra vires* act; and (10) demand for statutory distribution of assets. On 19 October 2007, the business court entered a "Revised Consent Order Modifying Cases Management Order[,]" which limited discovery and initial motions for partial summary judgment to the issues of withdrawal, dissolution, terms of dissolution, estoppel, the parties' relationship with the PLLC, and "the scope of any remaining issues in dispute." In accord with that order, both parties filed motions for partial summary judgment, with supporting deposition transcripts and exhibits, on 9 January 2008. Plaintiffs' motion requested judicial dissolution and dismissal of defendants' counterclaims "predicated on the proposition that no such dissolution occurred." Defendants' motion requested an order declaring that plaintiffs withdrew from the PLLC, the PLLC did not dissolve, plaintiffs are estopped from denying they withdrew from the PLLC, and plaintiffs are estopped from asserting that dissolution occurred on any terms other than the terms in the "Brewer Memo." The business court heard arguments on these motions. On 4 March 2008, plaintiffs filed a motion for preliminary injunction to enjoin defendants from disbursing future contingent fees and cost reimbursements received from the disputed contingent fee cases that were subject of the litigation. By order filed 9 April 2008, the business court denied plaintiffs' motion for preliminary injunction to enjoin Defendants On 15 August 2008, defendants filed a second motion for summary judgment arguing that the PLLC lacked standing to bring this action on its own behalf and individual plaintiffs lacked standing to bring this action derivatively on behalf of the PLLC. Defendants requested the business court grant summary judgment against the PLLC and plaintiffs on all claims. No arguments were held on defendants' second motion.

**MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE &
BOUGHMAN, PLLC v. BREWER**

[209 N.C. App. 369 (2011)]

On 31 March 2009, the business court issued its opinion on all pending motions for summary judgment. As to the issue of standing, the business court deemed the individual plaintiffs to have been members of the PLLC at the time the action was filed. The business court granted defendants' motion for partial summary judgment and dismissed plaintiffs' individual claims for an accounting to the PLLC (claim one), demand for liquidating distribution (claim three), constructive fraud/breach of fiduciary duty (claim four), and unfair and deceptive trade practices (claim five) for lack of standing. The business court denied defendants' summary judgment motion as to standing for the individual plaintiffs' claim for an accounting to plaintiffs (claim two). The business court also denied defendants' motion for partial summary judgment as to standing for plaintiffs' derivative claims for an accounting on behalf of the PLLC (claim one), demand for liquidating distribution (claim three), constructive fraud/breach of fiduciary duty (claim four), and unfair and deceptive trade practices (claim five).

As to the substantive issues, the business court first granted plaintiffs' motion for partial summary judgment as to defendants' counterclaim one for a declaratory judgment that plaintiffs withdrew from the PLLC and held that plaintiffs had not withdrawn from the PLLC pursuant to N.C. Gen. Stat. § 57C-5-06. As to the remainder of defendants' counterclaim one, the business court denied summary judgment as "there exist[ed] genuine issues of material fact[.]" As to defendants' second counterclaim for a declaratory judgment, the business court granted partial summary judgment for defendant, and based upon application of the doctrine of equitable estoppel, declared that based on plaintiffs' actions plaintiffs' were estopped from denying their withdrawal from the PLLC as of 30 June 2005 and were to be compensated based on the "fair value" of the cases as of this departure date. Based on this ruling, the business court held that defendants' motion for partial summary judgment as to their counterclaims of breach of fiduciary duty (counterclaim three), conversion/misappropriation of PLLC assets (counterclaim four), unjust enrichment (counterclaim five), constructive trust, equitable lien, and/or resulting trust (counterclaim six), breach of fiduciary duty/*ultra vires* act (counterclaim nine), and demand for statutory distribution of assets (counterclaim ten) were moot as they were brought in the alternative "[i]f it [was] determined that the individual Plaintiffs [had] not withdrawn from the Firm[.]" The business court granted defendants' motion for partial summary judgment dismissing

MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE &
BOUGHMAN, PLLC v. BREWER

[209 N.C. App. 369 (2011)]

plaintiffs' derivative claims for accounting to the PLLC (claim one), demand for liquidating distribution (claim three), constructive fraud/breach of fiduciary duty (claim four), and unfair and deceptive trade practices (claim five), finding "no genuine issue of material fact[.]" The business court denied defendants' motion for partial summary judgment to dismiss plaintiffs' individual claim for an accounting to plaintiffs (claim two) as there was a genuine issue of material fact as to the fair value of the individual plaintiffs' distributable interests in the PLLC as of 30 June 2005. The business court made no decision as to defendants' counterclaims seven and eight which related to "the defense of [a] malpractice action[.]" Plaintiffs and defendants Brewer and Mitchell filed notices of appeal.[1] On 16 December 2009, plaintiffs filed with this Court a motion to strike a portion of "Defendant-Cross Appellee's Brief."

## II. Plaintiffs' Motion to Strike

**[1]** We first address plaintiffs' motion to strike footnote two in "Defendant-Cross Appellee's Brief" ("footnote two") pursuant to N.C.R. App. P. 10 and 37 on the basis that this footnote contains an argument based on Rule 23 of the North Carolina Rules of Civil Procedure that was not "(1) presented to the trial court or (2) reflected in any of Defendants' assignments of error." Defendants' footnote two states that "this Court may properly order remand for entry of judgment in favor of Defendants" because plaintiffs failed to file a verified complaint in their derivative action alleging they were members of an unincorporated association, in violation of Rule 23(b) of the North Carolina Rules of Civil Procedure. Footnote two concludes that this violation "alone provides this Court the ground for dismissal" of plaintiffs' derivative action. N.C.R. App. P. 10(b)(1) states that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." Plaintiffs are correct that there is no indication in the record of any argument based on Rule 23 to the business court. Therefore, this issue is not properly before this Court and we may allow plaintiffs' motion to strike defendants' N.C. Gen. Stat. § 1A-1, Rule 23 argument contained in footnote two of "Defendant-Cross Appellee's Brief" pursuant to N.C.R. App. P. 10(b)(1).

---

1. Defendants Richardson and Brittain did not appeal from the business court's summary judgment ruling and are not parties to this appeal.

However, defendants contend that failure to verify the complaint is jurisdictional and parties to an appeal may raise the issue of jurisdiction for the first time on appeal. Although defendants are correct that matters of subject matter jurisdiction may be raised at any time, *see Wood v. Guilford County*, 355 N.C. 161, 164, 558 S.E.2d 490, 493 (2002), the failure to verify the complaint is not a jurisdictional defect. This argument was rejected by our Supreme Court in *Alford v. Shaw*, 327 N.C. 526, 398 S.E.2d 445 (1990). In *Shaw*, the plaintiffs filed an unverified complaint in their shareholder derivative action. *Id.* at 530, 398 S.E.2d at 447. The defendants, citing N.C. Gen. Stat. § 1A-1, Rule 23(b), argued "that in order for the trial court to have had subject matter jurisdiction over this shareholders' derivative suit the complaint was required to be verified when originally filed, and that it is not sufficient to verify the complaint after it is filed." *Id.* The Court rejected this argument and held that "because N.C.G.S. § 1A-1, Rule 23(b) addresses the procedure to be followed in, and not the substantive elements of, a shareholder's derivative suit, plaintiffs' failure to comply with the verification requirement at the time the complaint was filed is not a jurisdictional defect." *Id.* at 531, 398 S.E.2d at 447. The Court went on to conclude that "the defendants have waived their objection by failing to raise the issue of verification until this, the fourth time the case has been heard in the appellate division." *Id.* Therefore, lack of verification pursuant to N.C. Gen. Stat. § 1A-1, Rule 23(b) is not jurisdictional and defendants' arguments as to the lack of verification of the complaint are waived as they were not raised before the business court. Accordingly, defendants' argument is overruled and we grant plaintiffs' motion to strike footnote two in "Defendant-Cross Appellee's Brief" pursuant to N.C.R. App. P. 10.

### III. Grounds for Appellate Review

**[2]** As the business court's ruling did not finally dispose of all of the plaintiffs' claims and defendants' counterclaims, both plaintiffs' appeal and defendants' cross appeal are interlocutory. *See Metcalf v. Palmer*, 46 N.C. App. 622, 624, 265 S.E.2d 484, 485 (1980) ("An order is interlocutory if it does not determine the issues but directs some further proceeding preliminary to final decree." (citation and quotation marks omitted)).

Generally, there is no right of immediate appeal from an interlocutory order with two exceptions: (1) the order is final as to some claims or parties, and the trial court certifies pursuant to N.C.G.S. § 1A-1, Rule 54(b) that there is no just reason to delay the appeal,

or (2) the order deprives the appellant of a substantial right that would be lost unless immediately reviewed.

*FMB, Inc. v. Creech,* —— N.C. App ——, ——, 679 S.E.2d 410, 412 (2009) (citations and quotation marks omitted). Here, the business court's order stated that "[p]ursuant to authority of Rule 54(b), the court determines that there is no just reason for delay in entering final judgment as to the Claims and Counterclaims resolved[,]" and "except for future determination of the Plaintiffs' Claim Two and Defendants' First, Second, Seventh and Eight Claims stated by Counterclaim, the rulings reflected in this Order are deemed to constitute a final judgment as to all Claims and Counterclaims raised in this civil action." *See* N.C. Gen. Stat. § 1A-1, Rule 54(b). Even though we are not bound by the business court's Rule 54 certification, in our discretion we will review the parties' interlocutory appeals, as "there is no just reason for delay" and to avoid piece-meal litigation given the multiple inter-related claims and counterclaims brought forth by the parties. *See Hewett v. Weisser,* —— N.C. App. ——, ——, 689 S.E.2d 408, 409 (2009) (holding that "although this appeal is interlocutory, as the trial court's order did not dispose of all claims, we will review this appeal as the trial court certified the order for appeal and 'review will avoid piece-meal litigation.' "(citation omitted)).

## IV. Standard of Review

All of plaintiffs' and defendants' assignments of error relate to the business court's ruling on their motions for summary judgment.

> Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' N.C. Gen. Stat. § 1A-1, Rule 56(c). 'A trial court's grant of summary judgment receives *de novo* review on appeal, and evidence is viewed in the light most favorable to the non-moving party.' *Sturgill v. Ashe Memorial Hosp., Inc.,* 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied,* 362 N.C. 180, 658 S.E.2d 662 (2008).

*Liptrap v. Coyne,* —— N.C. App. ——, ——, 675 S.E.2d 693, 694 (2009). Plaintiffs' appeal addresses substantive issues related to the business court's ruling regarding the breakup of the PLLC but defendants' cross appeal addresses the issue of standing in addition to their arguments as to the substantive issues. As the issue of standing is

**MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE &
BOUGHMAN, PLLC v. BREWER**

[209 N.C. App. 369 (2011)]

jurisdictional, *see Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002), we will address standing before turning to the substantive merits of plaintiffs' and defendants' arguments on appeal.

## V. Standing

**[3]** Defendants contend that the business court erred in partially denying their motion for summary judgment on the issue of standing and not dismissing all of plaintiffs claims.

This Court has held that

[s]tanding' to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Sierra Club v. Morton*, 405 U.S. 727, 31 L. Ed. 2d 636 (1972). Standing is a jurisdictional issue[,] . . . [and] does not generally concern the ultimate merits of a lawsuit. *Id.* at 804.

*Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 140, 544 S.E.2d 821, 824 (2001). "A party has standing to initiate a lawsuit if he is a real party in interest." *Slaughter v. Swicegood*, 162 N.C. App. 457, 463, 591 S.E.2d 577, 582 (2004) (citations and quotation marks omitted); N.C. Gen. Stat. § 1A-1, Rule 17(a). "A real party in interest is 'a party who is benefitted or injured by the judgment in the case', [citation omitted] [and] who by substantive law has the legal right to enforce the claim in question." *Carolina First Nat'l Bank v. Douglas Gallery of Homes*, 68 N.C. App. 246, 249, 314 S.E.2d 801, 803 (1984) (citation omitted). Specifically, defendants contend that plaintiffs did not have standing to bring this action in the name of the PLLC, individually, or derivatively.

## A. Standing to Cause the PLLC to Institute an Action

Defendants contend that, as the majority of the member-managers of the PLLC, they did not authorize nor ratify this suit but have specifically objected to it being brought against them. Defendants claim that without their authorization, plaintiffs did not have authority to cause the PLLC to institute this action. The issue of whether a co-member of an PLLC could cause the PLLC to bring a suit against another co-member was addressed in *Crouse v. Mineo*, 189 N.C. App. 232, 658 S.E.2d 33 (2008).

In *Crouse*, the plaintiff, a 50% member of the PLLC law firm, caused the law firm to bring suit against the defendant, the other 50%

member of the PLLC law firm. *Id.* at 234, 658 S.E.2d at 35. The trial court dismissed plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). *Id.* at 235, 658 S.E.2d at 35. On appeal, this Court noted that N.C. Gen. Stat. § 57C-3-23 (2007) provides that "An act of a manager that is not apparently for carrying on the usual course of the business of the limited liability company does not bind the limited liability company unless authorized in fact or ratified by the limited liability company." *Id.* at 239, 658 S.E.2d at 38. This Court held that "the filing of an action by one manager of an LLC against a co-manager to recover purported assets of the LLC allegedly misappropriated by that co-manager is a management decision" requiring approval by a majority of the LLC members. *Id.* at 239, 658 S.E.2d at 37-38. In affirming the trial court's dismissal of the claims brought by the firm, this Court further noted that "it is clear that Defendant, as the other member-manager of [the PLLC law firm] . . . did not authorize or ratify the filing of the lawsuit[,]" and the plaintiff "lacked authority to cause [the PLLC law firm] . . . to institute the present action on its own behalf." *Id.* at 239, 658 S.E.2d at 38.

We note that the business court concluded that at the time the suit was filed "the Plaintiffs did not constitute a majority of the Members of the Firm and they therefore did not have authority to cause the Firm to bring any Claims in its own behalf." This conclusion is correct; the plaintiffs as minority members of the PLLC did not have authority to cause the PLLC to file the complaint.

Even though it is not addressed by either party on appeal, defendants state in their answer and counterclaims that they brought "this action on their own behalf and on behalf of the Firm." As we review the business court's ruling on partial summary judgment *de novo*, *Liptrap*, —— N.C. App. at ——, 675 S.E.2d at 694, we also address defendants' standing to cause the PLLC to bring counterclaims against plaintiffs. Here, defendants constituted a majority of members in the PLLC and properly had standing to cause the PLLC to bring counterclaims against plaintiffs.

B. Individual Standing

As we have determined that plaintiffs did not have standing to cause the PLLC to file claims against defendants, we next must consider whether plaintiffs had standing to bring individual claims against Defendants. Defendants, citing *Crouse v. Mineo*, argue that plaintiffs as individuals did not have standing to bring claims of unfair and deceptive trade practices and breach of fiduciary duty as these

claims relate to the parties' relationship with the PLLC. Plaintiffs contend that the business court erred in granting defendants' motion for partial summary judgment on this issue as "*Crouse* does not bar Plaintiffs from bringing this action individually." As stated above, the plaintiff and the defendant in *Crouse* were both members of a law firm organized and operated as a PLLC. 189 N.C. App. at 234, 658 S.E.2d at 35. The plaintiff brought individual claims against the defendant for *quantum meruit* for legal services rendered for the benefit of defendant and for unfair and deceptive trade practices, which were dismissed by the trial court. *Id.* at 245-46, 658 S.E.2d at 41. On appeal, this Court noted that N.C. Gen. Stat. § 57C-3-30(b), states that a member of a LLC "is not a proper party to proceedings by or against a limited liability company, except where the object of the proceeding is to enforce a member's right against or liability" to the LLC. *Id.* at 245, 658 S.E.2d at 41. This Court held that N.C. Gen. Stat. § 57C-3-30(b) was inapplicable to the plaintiff's individual claim for *quantum meruit. Id.* This Court, in reversing dismissal of the plaintiff's claim for *quantum meruit*, explained that "[w]hile [the plaintiff] would not be a proper party to a proceeding by [the PLLC law firm], the *quantum meruit* claim was brought to recover for injuries caused to [the plaintiff] individually." *Id.* As to the plaintiff's unfair and deceptive trade practices claim, this Court noted that the plaintiff alleged that this claim was based on "Defendant's breach of fiduciary duty and anticipatory breaches of fiduciary duty" and "Defendant had a 'special relationship of trust and confidence that constituted a fiduciary relationship[]' by virtue of 'their partnership, co-membership in [the PLLC law firm] and otherwise[.]' " *Id.* at 247, 658 S.E.2d at 42. This Court concluded that the plaintiff did not state an individual claim for unfair and deceptive trade practices because the allegation of breach of fiduciary duty and unfair and deceptive trade practices claims "relate[d] to the parties' relationship" through the PLLC law firm and affirmed the trial courts' dismissal of this claim. *Id.* at 247, 658 S.E.2d at 42.

Therefore, *Crouse* establishes that individual claims may be brought by a plaintiff-member of a PLLC against a defendant-member of that PLLC if the injuries alleged were caused to the plaintiff individually by that defendant, but individual claims may not be brought by a plaintiff-member against a defendant-member of an PLLC if those injuries alleged are based on duties that arise as part of the PLLC. *See id.* at 245, 247, 658 S.E.2d at 41, 42. Like the plaintiff in *Crouse*, plaintiffs here based their individual claims for an accounting to the PLLC (claim one), demand of liquidating distribution (claim

three), constructive fraud/breach of fiduciary duty (claim four), and unfair and deceptive trade practices (claim five) on defendants' breach of fiduciary duties to the PLLC as defendants had "assum[ed] responsibility for winding up the affairs of the Company[.]" As these individual claims by plaintiffs are based on the breach of fiduciary duties "relate[d] to the parties' relationship[,]" as part of the PLLC, see id. at 246-47, 658 S.E.2d at 42, we affirm the business court's order granting defendants' partial summary judgment motion and dismissing these individual claims by plaintiffs for lack of standing. Plaintiffs' individual claim for an accounting to plaintiffs (claim two) does not state that it is based on a breach of a fiduciary duty but on defendants' duties to account for the PLLC's "profits or benefit derived in connection with the winding up of the affairs of the Company." As this duty is also "relate[d] to the parties' relationship" as part of the PLLC, see id. at 246-47, 658 S.E.2d at 42, it is not a proper individual claim pursuant to Crouse. Therefore, we reverse the business court's denial of defendants' motion for summary judgment for plaintiffs' individual claim for an accounting to plaintiffs (claim two) and thereby, dismiss all of plaintiffs' individual claims.

Additionally, we note that based on its order granting partial summary judgment, the business court did not address defendant's individual standing to bring their counterclaims but held that defendants' counterclaims for breach of fiduciary duty (claim three), conversion/misappropriation of PLLC assets (claim four), unjust enrichment (claim five), constructive trust, equitable lien, and/or resulting trust (claim six), breach of fiduciary duty/ultra vires act (claim nine), and demand for statutory distribution of assets (claim ten) were rendered moot by its decision. As stated above, defendants' answer stated that they brought their counterclaims "on their own behalf and on behalf of the Firm." However, defendants' individual counterclaims three, four, five, six, and nine are based on the assertion that plaintiffs "still owe a fiduciary duty to the Firm." Accordingly, we reverse the business court's ruling that defendants' individual counterclaims three, four, five, six, and nine were moot; instead the business court should have dismissed these counterclaims because they were "relate[d] to the parties' relationship" in the PLLC. See id. at 246-47, 658 S.E.2d at 42.

C. Derivative Standing on Behalf of the PLLC

Defendants also contend that the business court erred in holding that plaintiffs had standing to bring a derivative action on behalf of

the PLLC. N.C. Gen. Stat. § 57C-8-01(a)-(b) (2007) provides the requirements for a member of a LLC to bring a derivative suit:

(a) A member may bring an action in the superior court of this State in the right of any domestic or foreign limited liability company to recover a judgment in its favor if the following conditions are met:

(1) The plaintiff does not have the authority to cause the limited liability company to sue in its own right; and

(2) The plaintiff (i) is a member of the limited liability company at the time of bringing the action, and (ii) was a member of the limited liability company at the time of the transaction of which the plaintiff complains, or the plaintiff's status as a member of the limited liability company thereafter devolved upon the plaintiff pursuant to the terms of the operating agreement from a person who was a member at such time.

(b) The complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the managers, directors, or other applicable authority and the reasons for the plaintiff's failure to obtain the action, or for not making the effort.

Defendants argue that at the time plaintiffs filed their derivative claims, they had already withdrawn from the PLLC and were not "members" of the PLLC and did not have standing to file a derivative suit. As defendants point out, N.C. Gen. Stat. § 57C-5-06 (2007), states that a member of a LLC "may withdraw only at the time or upon the happening of the events specified in the articles of organization or a written operating agreement." Defendants argue that plaintiffs withdrew pursuant to a written operation agreement or by application of the doctrine of equitable estoppel. Therefore, we must consider whether the plaintiffs were still "members" of the PLLC when they filed the complaint. If they were members, they had standing to bring derivative claims on behalf of the PLLC; if not, they did not have standing.

1. Withdrawal by Written Operating Agreement

N.C. Gen. Stat. § 57C-5-06 (2007) addresses voluntary withdrawal from an LLC: "A member may withdraw only at the time or upon the happening of the events specified in the articles of organization or a written operating agreement." N.C. Gen. Stat. § 57C-1-03(16) (2007) defines "operating agreement" as follows:

Any agreement, written or oral, of the members with respect to the affairs of a limited liability company and the conduct of its business that is binding on all the members. An operating agreement shall include, in the case of a limited liability company with only one member, any writing signed by the member, without regard to whether the writing constitutes an agreement, that relates to the affairs of the limited liability company and the conduct of its business.

N.C. Gen. Stat. § 57C-3-05 (2007) sets forth the circumstances under which a member is bound by the terms of an operating agreement:

A member shall be bound by any operating agreement, including any amendment thereto, otherwise valid under this Chapter and other applicable law, (i) to which the member has expressly assented, or (ii) which was in effect at the time the member became a member and either was in writing or the terms of which were actually known to the member, or (iii) with respect to any amendment, if the member was bound by the operating agreement as in effect immediately prior to such amendment and such amendment was adopted in accordance with the terms of such operating agreement. The articles of organization or written operating agreement may require that all agreements of the members constituting the operating agreement be in writing, in which case the term "operating agreement" shall not include oral agreements of the members. Except to the extent otherwise provided in a written operating agreement, a limited liability company shall be deemed for all purposes to be a party to the operating agreement of its member or members.

Here, the articles of organization apparently did not address withdrawal; the articles are not in our record and no party has argued that the articles control this issue. It is also undisputed that the PLLC did not have a formal written "operating agreement." Defendants contend that this Court should liberally construe N.C. Gen. Stat. § 57C-5-06 to hold that the writings and oral representations made by and between plaintiffs and defendants amounted to an "operating agreement" which governs the terms of their withdrawal. Defendants claim that the following documents in the aggregate form an operating agreement to withdraw and consent to withdraw from the PLLC by plaintiffs: (1) plaintiff Adams' email to the PLLC members stating that he was leaving the PLLC; (2) plaintiff Boughman's letter terminating his COBRA benefits; (3) plaintiff Burge's client letters stating plaintiffs

**MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE &
BOUGHMAN, PLLC v. BREWER**

[209 N.C. App. 369 (2011)]

had "withdrawn[;]" (4) plaintiffs' new articles of incorporation creating a new firm, contracts in association with venders to service the new firm, and the application to the State Bar for permission to form a LLC; (5) plaintiff Boughman's letter to BB&T; and (6) defendant Brewer's memorandum which established specific terms for withdrawal.

After careful review, we hold that the documents put forward by defendants do not rise to the level of a binding agreement on the members of the PLLC. Although N.C. Gen. Stat. § 57C-1-03(16) does permit an operating agreement to be oral or written, both N.C. Gen. Stat. §§ 57C-1-03 and 57C-3-05 require that each member agree to the terms of the operating agreement. N.C. Gen. Stat. § 57C-3-05 provides that a member is bound by an operating agreement only if "the member has expressly assented" to it.[2] But in this situation, the various documents demonstrate the parties' disagreement as to how to handle the breakup of the PLLC; they certainly do not demonstrate that any plaintiff "expressly assented" to any terms proposed by defendants, including the Brewer memo. Although plaintiff Adam's 14 June 2008 email does state that he is leaving the PLLC, it also states that as a result he expects to receive his "share of revenue and compensation" equal to his percentage of ownership interest, including revenues "from this day forward." Contrary to defendants' contentions, this language is not similar to the process for distribution of a member's assets upon withdrawal pursuant to N.C. Gen. Stat. § 57C-5-07 (2007) (any withdrawing member is entitled to "the fair value of the member's interest in the limited liability company as of the date of withdrawal . . . ."), as plaintiff Adam is demanding a share of future revenues. Plaintiff Boughman's COBRA Insurance letter merely states that he is cancelling his COBRA health insurance coverage for his family through the plan offered by the PLLC because he has another health insurance provider. Plaintiff Boughman makes no mention of anything that could be construed as allowing for a withdrawal from the PLLC. We also note that plaintiff Boughman would also have had to cancel his medical insurance through the PLLC upon ceasing to work there, regardless of the circumstances of his leaving the PLLC. Plaintiff Burge's client letter is not included in the record on appeal and thus we cannot consider it. Plaintiffs' articles of organization creating a new firm, the related contracts from vendors,

---

2. The provisions of N.C. Gen. Stat. § 57C-3-05 as to an operating agreement "(ii) which was in effect at the time the member became a member and either was in writing or the terms of which were actually know to the member" and "(iii) with respect to an amendment" are not implicated here.

and plaintiffs' application to the State Bar to form a LLC do not mention any operating agreement of the PLLC or make any representations regarding plaintiffs' position on the breakup of the PLLC. Plaintiffs would have had to start a new firm to continue representing their clients whether they had withdrawn from the PLLC or if the PLLC was going through a dissolution. Plaintiff Boughman's letter to BB&T merely asks if defendants had paid off the PLLC's debts and informs the bank that they did not consent to any further loans. In fact, plaintiff Boughman states that the PLLC went through a "dissolution on July 12, 2005." Finally, the Brewer memo does address plaintiffs' "withdrawal" from the PLLC but also states that "the remaining members of the firm are effectuating a winding up of the operation of the law firm[.]" *See* N.C. Gen. Stat. § 57C-5-04 ("the managers shall wind up the limited liability company's affairs following its dissolution . . . ."). However, defendant Brewer testified in his deposition that in his memorandum he used these terms in a "nontechnical sense." Also, we see no indication that the plaintiffs "expressly assented" to the Brewer memo's terms as they never discussed it with any defendant and plaintiffs did not cash the checks tendered to them with the Brewer memo. *See Zanone v. RJR Nabisco*, 120 N.C. App. 768, 773, 463 S.E.2d 584, 588 (1995) ("the law clearly states, the cashing of a check tendered in full payment of a disputed claim establishes an accord and satisfaction as a matter of law. . . . The claim is extinguished, regardless of any disclaimers which may be communicated by the payee." (citation, brackets, and quotation marks omitted)). Defendant Brewer, in his deposition, even suggested that he understood that plaintiffs did not agree to the terms of the Brewer memo as he explained that the reason he had not sent plaintiffs their shares of the expenses paid from the disputed contingency fee cases that had been collected was because plaintiffs had not cashed the checks tendered pursuant to the Brewer memo. Therefore, it is not clear in these documents whether the parties are referring to a "withdrawal" or a "dissolution." In the aggregate, these writings fall significantly short of establishing a "written operating agreement" allowing for a withdrawal, *see* N.C. Gen. Stat. § 57C-5-06, nor is there any indication that the plaintiffs "expressly assented" to the terms as proposed by Defendants *See* N.C. Gen. Stat. § 57C-3-05. The PLLC had no operating agreement, so plaintiffs could not have withdrawn pursuant to N.C. Gen. Stat. § 57C-5-06. Accordingly, defendants' argument is without merit.

## 2. Withdrawal by Estoppel

Defendants contend in the alternative that plaintiffs are estopped from claiming that they did not withdraw from the PLLC. Defendants further argue that this "withdrawal by estoppel" occurred before plaintiffs filed their derivative claims. Therefore, defendants claim that plaintiffs were not members of the PLLC at the time they filed suit and did not have standing to file a derivative claim on behalf of the PLLC. However, defendants' second motion for summary judgment addressing plaintiffs' standing makes no argument regarding the doctrine of equitable estoppel. The business court's judgment also makes no mention of estoppel in its ruling on plaintiffs' standing. "It is a long-standing rule that a party in a civil case may not raise an issue on appeal that was not raised at the trial level." *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 690, 562 S.E.2d 82, 95 (2002); N.C.R. App. P. 10(b)(1). As defendants failed to raise the issue of equitable estoppel in its motion addressing standing, we will not consider this argument for the first time on appeal. Defendant's argument is overruled.

Accordingly, we hold that for the purpose of standing, plaintiffs were members of the PLLC at the time of filing their complaint. As to the other requirements in N.C. Gen. Stat. § 57C-8-01 for members of a LLC to bring a derivative action, it appears that plaintiffs had a minority ownership interest in the PLLC and could not cause the PLLC to sue in its own right. As to the particularized efforts alleged by plaintiffs to "obtain the action the plaintiff desires[,]" the complaint states that

> 19. Defendants by check purported to make a final distribution to Plaintiffs. Plaintiffs did not accept this distribution, as evidenced by their refusal to negotiate the checks, and their oral notices to Defendants. Plaintiffs also made written demand upon the Defendants for an accounting of the Company assets and of the profits thereof since December 31, 2004, the date of the last accounting for Company profits and losses, and to pay over to the Plaintiffs their final Company distribution as provided for under N.C.G.S. § 57C-6-05 . . . .

> 20. Defendants failed and refused to render such an accounting and/or pay over such final distribution to the Plaintiffs."

*See* N.C. Gen. Stat. § 57C-8-01. Therefore, plaintiffs had standing to bring their derivative claims against Defendants. Accordingly, we affirm the business court's denial of defendant's motion for partial

summary judgment as to plaintiffs' standing to bring their derivative claims on behalf of the PLLC.

In summary, we hold that plaintiffs had standing to bring their derivative claims, but not their individual claims; defendants had standing to bring their counterclaims on behalf of the PLLC, but not their individual counterclaims. Therefore, we affirm and reverse the business court's summary judgment rulings on standing accordingly.

### VI. Plaintiffs' and Defendants' Substantive Claims

[4] Moving to the substantive issues, plaintiffs first contend that the business court committed reversible error in affirmatively applying equitable estoppel to sustain defendants' counterclaim for declaration of withdrawal and refusing to apply the provisions of the Limited Liability Company Act to resolve the deadlock among the members of the PLLC. Defendants contend that the business court did not err in its application of the doctrine of equitable estoppel as North Carolina law "does not mandate a finding of dissolution or an order for winding up."

### A. The Doctrine of Equitable Estoppel .

The business court, in partially granting defendants' second counterclaim, declared that under principles of equitable estoppel plaintiffs were estopped from denying that they withdrew from the PLLC as of 30 June 2005. N.C. Gen. Stat. § 57C-10-05 (2007) provides that "[i]n any case not provided for in this Chapter, the rules of law and equity shall govern." N.C. Gen. Stat. § 57C-10-03(b) also provides that "[t]he law of estoppel shall apply under this Chapter[.]" Accordingly, the business court stated in its findings that "[a]fter due consideration, the court concludes that the Breakup Facts present a situation not consistent with the spirit or letter of the Act, and therefore not provided for in the [Limited Liability Company Act,]" and went on to apply the doctrine of equitable estoppel to declare that plaintiffs could not deny they withdrew from the PLLC.[3] However, our Courts have consistently held that

---

3. We note that in contrast to the business court's 31 March 2008 "Opinion and Order[,] stating that no legal remedy was appropriate in these circumstances, the business court in denying plaintiffs' 4 March 2008 motion for preliminary injunction to enjoin defendants from disbursing future contingent fees and cost reimbursement received from the disputed contingent fee cases concluded that this ruling was in part based on the conclusion that plaintiffs' "claims for money damages [were] adequately provided for at law," and noted that, "Ordinarily, an injunction will not be granted where there is a full, adequate and complete remedy at law, which is as practical and efficient as is the equitable remedy.

'[e]quity will not lend its aid in any case whe[n] the party seeking it has a full and complete remedy at law.' *Centre Development Co. v. County of Wilson*, 44 N.C. App. 469, 470, 261 S.E.2d 275, 276, *review denied, appeal dismissed*, 299 N.C. 735, 267 S.E.2d 660 (1980) (citation omitted) (plaintiff could not use an injunction to prevent the county's use of eminent domain when plaintiff had a statutory remedy); *Hawks v. Brindle*, 51 N.C. App. 19, 25, 275 S.E.2d 277, 282 (1981) (plaintiff could not use an equitable restitution claim when plaintiff had a legal remedy for breach of the covenant against encumbrances); *see also Johnson v. Stevenson*, 269 N.C. 200, 152 S.E.2d 214 (1967) (plaintiff cannot invoke a constructive trust on property disposed of by will when a direct attack by will caveat 'gave her a full and complete remedy at law'); *Jefferson Standard Life Ins. Co. v. Guilford County*, 225 N.C. 293, 34 S.E.2d 430 (1945) (plaintiff could not use a restitution theory for recovering the balance of a promissory note secured by a deed of trust when plaintiff had the legal remedy of foreclosure).

*Jones Cooling & Heating, Inc. v. Booth*, 99 N.C. App. 757, 759-60, 394 S.E.2d 292, 294 (1990), *disc. review denied*, 328 N.C. 732, 404 S.E.2d 869 (1991). Plaintiffs contend that there was a legal remedy applicable-the North Carolina Limited Liability Company Act-which allows for judicial dissolution of a limited liability company in a proceeding by a member because of deadlock or misapplication of company assets, and the business court's application of equity was in error. Therefore, we must first determine if there was "a full and complete remedy at law" under the Limited Liability Company Act. *See id.*

B. Withdrawal

We first determine whether plaintiffs withdrew as a matter of law. N.C. Gen. Stat. § 57C-3-02 (2007), states that "[a] person ceases to be a member of a limited liability company upon the happening of any of the following events of withdrawal: (1) The person's voluntary withdrawal from the limited liability company as provided in G.S. 57C-5-06[.]"[4]

---

4. Other "events of withdrawal" include (2) removal pursuant to the articles of organization or an operating agreement; (3) assignment to creditors, voluntary petition in bankruptcy, adjudication of bankruptcy or insolvency, filing a petition seeking "reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation[,]" the appointment of trustee or receiver for that person's properties, and filing answer or other pleadings admitting or failing to contest an allegation of withdrawal; (4) continuation of a proceeding against person seeking reorganization, etc. (5) a death or adjudication of incompetent; (6) termination

As stated above, for voluntary withdrawal N.C. Gen. Stat. § 57C-5-06, states that a member of an LLC "may withdraw only at the time or upon the happening of the events specified in the articles of organization or a written operating agreement." The record on appeal does not contain the articles of organization for the PLLC and, as we determined above, there was no written operating agreement providing for withdrawal of a PLLC member. Therefore, withdrawal pursuant to N.C. Gen. Stat. § 57C-5-06 was not available as a remedy at law for the parties. Accordingly, we affirm the business court's order granting plaintiffs' motion for partial summary judgment and dismissing defendants' first counterclaim requesting a declaratory judgment that individual plaintiffs withdrew from the PLLC pursuant to N.C. Gen. Stat. § 57C-5-06.

C. Judicial Dissolution

Turning next to plaintiffs' argument as to whether judicial dissolution was applicable, N.C. Gen. Stat. § 57C-6-02 (2007) states that "[t]he superior court may dissolve a limited liability company in a proceeding" by a member of that LLC

> if it is established that (i) the managers, directors, or any other persons in control of the limited liability company are deadlocked in the management of the affairs of the limited liability company, the members are unable to break the deadlock, and irreparable injury to the limited liability company is threatened or being suffered, or the business and affairs of the limited liability company can no longer be conducted to the advantage of the members generally, because of the deadlock; (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining member, (iii) the assets of the limited liability company are being misapplied or wasted; or (iv) the articles of organization or a written operating agreement entitles the complaining member to dissolution of the limited liability company[.]

Here, since 14 June 2005, there has been a deadlock between the PLLC members as a result of their disagreement regarding division of profits derived from pending contingent fee cases when three members

---

of the trust when a member is acting as a trustee; (7) dissolution and commencement of winding up of the LLC; (8) dissolution or revocation of the LLC's charter; and (9) distribution by the fiduciary of an estate's entire interest in the LLC. N.C. Gen. Stat. § 57C-3-02. As the contention by defendants is that plaintiffs voluntarily withdrew when they left the PLLC in June 2005, the other grounds for withdrawal enumerated in N.C. Gen. Stat. § 57C-3-02 are inapplicable.

of the PLLC left the PLLC, and plaintiffs and defendants began practicing separate and apart beginning on 1 July 2005. Although there were communications between plaintiffs and defendants addressing the assets of the PLLC, none resolved this deadlock. Because the three plaintiffs were no longer willing to practice with defendants, the PLLC could "no longer be conducted to the advantage of the members generally[.]" *See id.* Liquidation of the PLLC's assets "is reasonably necessary for the protection of the rights or interests of the complaining member" as the PLLC's members have been unable to reach any agreement regarding profits from the disputed pending contingent fee cases. *See id.* Also, there is evidence that profits made by defendants since the deadlock from one of the disputed contingent fee cases were not distributed to the members or accounted for by Defendants. Therefore, there is a potential that the PLLC's assets are being misapplied. Accordingly, plaintiffs have forecast facts which would permit judicial dissolution pursuant to N.C. Gen. Stat. § 57C-6-02. As defendants had "a full and complete remedy at law[,]" the business court erred in not applying this legal remedy and instead applying the principles of equity to resolve the issues arising from this breakup. *See Jones*, 99 N.C. App. at 759-60, 394 S.E.2d at 294.

Defendants contend that "[j]udicial dissolution is a remedy left to the discretion of the trial court, even if a party were to establish" the elements for dissolution listed in N.C. Gen. Stat. § 57C-6-02. Defendants contend that it was within the business court's discretion not to declare a judicial dissolution as "the undisputed facts in this case permit a single inference: that the doctrine of quasi-estoppel bars Plaintiffs claims." In support of this argument defendants again cite *Crouse v. Mineo*, 189 N.C. App. 232, 658 S.E.2d 33 (2008).

In *Crouse*, the plaintiff contended that the "trial court erred by denying their motion to appoint [the plaintiff] to wind up the affairs of [the PLLC law firm]." 189 N.C. App. at 247, 658 S.E.2d at 42. This Court noted that

[the plaintiff] petitioned the trial court for the appointment of a person to wind up the affairs of [the PLLC law firm]. N.C.G.S. § 57C-6-04(a) further provides as follows: 'The court *may* wind up the limited liability company's affairs, or appoint a person to wind up its affairs, on application of any member, his legal representative, or assignee.' *Id.* (emphasis added). The use of the term 'may' connotes discretion on the part of the trial court to wind up

the affairs itself, appoint a person to do so, or do neither. *See Wade v. Carolina Brush Mfg. Co.*, 187 N.C. App. [245], 250, 652 S.E.2d 713, 717 (2007) (recognizing that '[t]he use of the word 'may' has been interpreted by our Supreme Court to connote discretionary power, rather than an obligatory one'); *Campbell v. Church*, 298 N.C. 476, 483, 259 S.E.2d 558, 563 (1979) (stating that 'the use of 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act.').

*Id.* at 247-48, 658 S.E.2d at 42. This Court went on to hold that the trial court did not abuse its discretion in not appointing plaintiff to wind up the PLLC because the plaintiff's complaint had been dismissed in its entirety, and the "unique circumstances existing at the time the trial court denied the motion[.]" *Id.* at 248, 658 S.E.2d at 42-43. This case is unlike *Crouse* as the complaint and counterclaims have not been dismissed in their entirety. Also, in *Crouse*, the "unique circumstances" were not specifically identified by the Court, *See id.* at 235, 658 S.E.2d at 35 and defendants make no argument that "unique circumstances" also exist here which would justify application of the same rule.

We agree with defendants that N.C. Gen. Stat. § 57C-6-02 states that the trial court "may" issue a judicial dissolution, and the issuance of such an order of dissolution is within the trial court's discretion. *See id.* at 247-48, 658 S.E.2d at 42. However, the terms of N.C. Gen. Stat. § 57C-6-02 directly address the situation presented here, where judicial dissolution is the only available legal remedy to resolve the PLLC's disputes. We have determined that the business court erred to the extent that it used equitable estoppel to create an "operating agreement" governing withdrawal even after the deadlock between the members of the PLLC had arisen, and the only reason the business court did not issue judicial dissolution was its determination that equitable estoppel was instead the proper basis for resolution of this case. Therefore, because the business court improperly applied equitable estoppel in this situation, it abused its discretion by not ordering judicial dissolution of the PLLC.

On appeal defendants also bring forth the argument that the business court erred in denying their motion for summary judgment because plaintiffs were estopped from denying withdrawal on any terms other than those expressed in the Brewer memorandum. However, as we have ruled that the business court erred in its application of the doctrine of equitable estoppel, this argument is overruled.

## VII. Conclusion

Accordingly, we reverse the business court's judgment granting partial summary judgment in favor of defendants on the basis of equitable estoppel and remand to the business court for granting of summary judgment in favor of plaintiffs on the issue of judicial dissolution pursuant N.C. Gen. Stat. § 57C-6-02, for a decree of dissolution, and directing the winding up of the PLLC pursuant to N.C. Gen. Stat. § 57C-6-02.3 (2007). Given this ruling, plaintiffs' derivative claims for an accounting to the PLLC (claim one), an accounting to plaintiffs (claim two), and a demand of liquidating distribution (claim three), as well as defendants' counterclaim for a demand for statutory distribution of assets (counterclaim ten), will be addressed by the business court in its directing the winding up of the PLLC. As plaintiffs are deemed not to have not withdrawn "from the Firm as of June 30, 2005[,]" this creates a genuine issue of material fact as to plaintiffs' remaining derivative claims and defendants' counterclaims brought on behalf of the PLLC. *See Liptrap,* —— N.C. App. at ——, 675 S.E.2d at 694. Accordingly, we reverse the business court's granting of defendants' motion for summary judgment dismissing plaintiffs' derivative claims for constructive fraud/breach of fiduciary duty (claim four) and unfair and deceptive trade practices (claim five) and remand for further proceedings on these claims. We also reverse the business court's ruling that defendants' counterclaims on behalf of the PLLC for breach of fiduciary duty (counterclaim three), conversion/misappropriation of PLLC assets (counterclaim four), unjust enrichment (counterclaim five), constructive trust, equitable lien, and/or resulting trust (counterclaim six), and breach of fiduciary duty/*ultra vires* act (counterclaim nine) were moot, and remand for future proceedings. As the business court made no ruling regarding defendants' for breach of fiduciary duty (counterclaim seven) and unjust enrichment (counterclaim eight), these claims would also go forward.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges GEER and ELMORE concur.